IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **MARYLENE BROADNAX et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| v. ) | Case No. 2:09-cv-02639 |
| ) | |
| **SWIFT TRANSPORTATION** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant Swift Transportation Corporation's ("Swift") Motion to Dismiss Second Amended Complaint filed August 17, 2009.[1]  (D.E. #14.) Plaintiffs Marylene Broadnax et al. (collectively, "Plaintiffs") filed their response in opposition on September 10, 2009, and Swift filed a reply on November 25, 2009.  For the reasons stated below, Swift's motion to dismiss is **DENIED**.

**I. BACKGROUND**[2]

The named plaintiffs in this case—Marylene Broadnax, Reginald Lane, Elisha Jones, Brandon Horne, and Kevin Shakur—bring this action on behalf of themselves and all others similarly situated.  (Pls.' Second Am. Compl. ¶ 1.)  Plaintiffs are commercial truck drivers residing in the State of Georgia, who received their Georgia commercial driver's licenses ("CDLs") after obtaining their Tennessee CDLs based on training and testing provided by Swift.  (Id.)  The State of Georgia has since cancelled Plaintiffs'

---

[1] This action originated in the DeKalb County (Georgia) Superior Court and was then removed to the United States District Court for the Northern District of Georgia.  The case was transferred to the Western District of Tennessee on September 30, 2009 and consolidated with three other related cases.

[2] The following factual recitation is taken from Plaintiffs' Second Amended Complaint and is assumed to be true for purposes of this motion only.

CDLs because of improper testing procedures utilized by Swift.  (Id. ¶¶ 1-2.) Approximately 1,200 Georgia CDL-holders have had their CDLs revoked because of problems with Swift's testing.  (Id. ¶ 2.)

From 2005 through 2008, Swift, a trucking company headquartered in Pheonix, Arizona, operated a 23-day training course known as the Swift Driving Academy ("Swift Academy") in Millington, Tennessee.  (Id. ¶¶ 3, 7.)  Swift trained its students to become commercial truck drivers and represented to Plaintiffs that the State of Tennessee had authorized it to administer the Tennessee CDL examination.  (Id. ¶ 7.)  The total cost to each student for Swift's training and testing program was $4,050.  (Id. ¶ 9.)

Plaintiffs enrolled in and traveled to the Swift Academy in Millington to receive training.  (Id. ¶ 10.)  After completing Swift's training course, Plaintiffs obtained their Tennessee CDLs through testing administered by Swift.  (Id. ¶ 11.)  Plaintiffs then obtained Georgia CDLs on the basis of their Tennessee CDLs and secured employment as drivers for commercial trucking companies, working until the State of Georgia revoked their licenses.  (Id. ¶¶ 12-14.)

During the period from March 2005 to January 2008, Swift violated numerous federal and state laws governing CDL testing.  (Id. ¶ 15.)  Specifically, Swift's road instructors doubled as CDL testers, and Swift falsely certified that student drivers had passed a "skills" test, when in fact Swift had failed to conduct the "skills" portion of the CDL exam.  (Id.)  Additionally, Swift issued CDLs to individuals it knew did not meet Tennessee's residency requirement, and Swift further failed to maintain accurate and sufficient records on its students.  (Id.)

Acting upon knowledge of these violations, law enforcement raided Swift's facilities in Millington, and later the State of Tennessee permanently revoked Swift's status as a third-party CDL tester.  (Id. ¶ 18.)  Upon being notified by the State of Tennessee of Swift's violations of law in conducting CDL testing, the State of Georgia informed Plaintiffs and other Swift-trained drivers that their licenses were compromised and would be revoked.  (Id. ¶¶ 19-20.)  The State of Georgia required all Swift graduates to be retested, which has resulted in Plaintiffs having to pay permitting fees and other costs for retesting.  (Id. ¶¶ 22, 25.)  Plaintiffs were unable to drive for their employers once their CDLs were revoked.  (Id. ¶ 23.)  Plaintiffs have thus lost income while waiting to obtain new CDLs.  (Id. ¶ 24.)

Plaintiffs bring this suit as a putative class action on behalf of all similarly situated class members.  (Id. ¶¶ 27-34.)  Plaintiffs assert causes of action for breach of contract, negligence and gross negligence, and money had and received.  (Id. ¶¶ 35-51.)  Plaintiffs also seek punitive damages.

## II. LEGAL STANDARD[3]

### A. Legal Standard for Motion under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure asserts that the court lacks subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction may challenge the sufficiency of the complaint itself—in which case it constitutes a facial attack—or it may challenge the factual existence of subject matter jurisdiction—in which case the motion constitutes a factual attack. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  In ruling upon a facial attack, the

---

[3] The legal standard for a motion to dismiss for failure to join an indispensable party is located below at Section III.D.

3

court must take as true the allegations of the plaintiff's complaint and construe them in the light most favorable to the plaintiff, but in a factual attack, the court does not presume that the complaint's allegations are true and instead considers other evidence bearing upon the question of subject matter jurisdiction. DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). When faced with a factual attack, the trial court may, at its discretion, consider affidavits and documents and even conduct a limited evidentiary hearing to resolve any disputes as to jurisdictional facts. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of proving jurisdiction on a motion to dismiss under Rule 12(b)(1). Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986); see United Gov't Sec. Officers of Am. v. Akal Sec., Inc., 475 F. Supp. 2d 732, 736 (S.D. Ohio 2006).

**B. Legal Standard for Motion under Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure only tests whether a cognizable claim has been pled. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). To determine whether a motion to dismiss should be granted, the court examines the complaint, which must contain a short and plain statement of the claim showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a)(2). It must also provide the defendant with fair notice of the plaintiff's claim as well as the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). While the complaint need not present detailed factual allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

suffice. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007); see also Scheid, 859 F.2d at 436-37.

Likewise, the complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level[.]" Twombly, 127 S. Ct. at 1965 (citation omitted). The mere possibility that some set of undisclosed facts will support recovery is insufficient to overcome a 12(b)(6) challenge. Twombly, 127 S. Ct. at 1968; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). On a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations made in the complaint and construes them in the light most favorable to the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96 (6th Cir. 2008); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983). The court, however, only takes as true well-pled facts, and it will not accept legal conclusions or unwarranted factual inferences. Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998); see Iqbal, 129 S. Ct. at 1949.

## III. ANALYSIS

### A. Contractual and Related Claims[4]

*1. Contract Claims*

Swift first argues that Plaintiffs' claims for contractual recovery should be dismissed because, according to Swift, the written contract between Swift and Plaintiffs did not relate to testing and expressly disclaimed any guarantee that Plaintiffs would pass

---

[4] Swift asserts that this case is governed by Tennessee law. Plaintiffs state that for purposes of this motion they agree that Tennessee law governs. Plaintiffs state further that Georgia law does not differ from Tennessee law with respect to the issues raised in Swift's motion. Accordingly, the Court will apply Tennessee law in deciding this motion.

5

the Tennessee CDL test.  Swift's arguments regarding the written agreement between Swift and Plaintiffs are misplaced.  Plaintiffs allege that they each paid Swift $150 specifically for the purpose of receiving CDL testing.  The absence of a written agreement covering CDL testing does not necessarily preclude the existence of a contract.  See, e.g., In re Estate of Haskins, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006) ("A contract generally need[] not be in writing in order to be enforceable, unless it is of a kind required by the statute of frauds or other law to be written.").  Thus, Plaintiffs' complaint alleges facts from which the existence of a contractual agreement could be inferred, and Plaintiffs may sue to recover for breach of this agreement.  Furthermore, if Plaintiffs are correct in alleging that Swift engaged in misconduct while performing CDL tests and that this misconduct led to the revocation of Plaintiffs' licenses, it is surely specious to argue that Swift's contract for training did not guarantee that any student would pass the CDL exam since the inquiry would then focus on Swift's deficient administration of the test rather than on the student's test performance.

Swift also argues that, even if Plaintiffs had a contract for testing, it would be with Swift's principal, the State of Tennessee.  The facts developed in discovery may establish that Swift was merely an agent of the State of Tennessee and that Swift cannot be held liable because of its agency relationship with the State.  At this stage of the proceedings, however, Plaintiffs allegation that Swift engaged in misconduct in testing and otherwise acted outside the scope of any agency relationship with the State of Tennessee suffices to defeat Swift's argument that Plaintiffs' contract claims should be dismissed.

*2. Claim for Money Had and Received (Unjust Enrichment)*

A claim for money had and received is the equivalent of a claim for unjust enrichment under Tennessee law. Bennett v. Visa U.S.A., Inc., 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) ("Both unjust enrichment and money had and received are essentially the same cause of action, being both quasi-contractual actions."). "The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable [ ] to retain the benefit without payment of the value thereof.'" Freeman Indus., LLC v. Eastman Chem, Co., Inc., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (1966)).

Swift argues that because there exists a valid and enforceable contract between Swift and Plaintiffs, Plaintiffs cannot sue for unjust enrichment. The contract on which Swift relies, however, concerns training by the Swift Academy. Plaintiffs have alleged the existence of a separate, unwritten contract covering Swift's administration of CDL testing—a contract Swift denies. If the facts fail to establish the existence of an enforceable, unwritten contract governing testing, Plaintiffs may nevertheless seek recovery under an alternative theory. See Freeman Indus., 172 S.W.3d at 524-25 ("Courts may impose a contract implied in law where no contract exists under various quasi contractual theories, including unjust enrichment."). Therefore, Plaintiffs' claim for money had and received or unjust enrichment is a proper alternative theory of relief. See Fed. R. Civ. P. 8(d)(2)-(3) (allowing party to plead alternative and inconsistent claims or

7

defenses); see, e.g., Son v. Coal Equity, Inc., 122 F. App'x 797, 802 (6th Cir. 2004) (allowing plaintiff to pursue quantum meruit claim as alternative to contract claim).

## B. The Economic Loss Doctrine

Plaintiffs sue Swift for negligence and gross negligence under the theory that Swift was negligent in the provision of CDL testing services to Plaintiffs. Swift contends that Plaintiffs' negligence claims must be dismissed under the economic loss doctrine, "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss," Lincoln Gen. Ins. Co. v. Detroit Diesel Corp., 293 S.W.3d 487, 488 (Tenn. 2009).[5] According to Swift, the economic loss doctrine applies to all actions brought in tort, while Plaintiffs argue that the doctrine only applies to cases involving defective products and not to cases arising from the negligent provision of services. Although the Tennessee Supreme Court has stated that "Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence," Ritter v. Custom Chemicides, Inc., 912 S.W.2d 128, 133 (Tenn. 1995), Tennessee's highest court has never addressed whether the economic loss doctrine applies outside of the products liability context. "If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule, what the state's highest court would decide if faced with the issue." Am. and Foreign Ins. Co. v.

---

[5] The Tennessee Supreme Court has further said that "[t]he economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property." Lincoln Gen. Ins. Co., 239 S.W.3d at 489.

8

Bolt, 106 F.3d 155, 158 (6th Cir. 1997) (quoting Grantham and Mann v. Am. Safety Prods., Inc., 831 F.2d 596, 608 (6th Cir. 1987)).

For support, Swift relies on three cases—one published, two unpublished—from the Tennessee Court of Appeals.[6] In the sole published Tennessee case Swift cites directly addressing the issue, United Textile Workers v. Lear Siegler Seating Corp., the court held that the economic loss doctrine precluded a suit by workers seeking lost wages against a factory owner whose propane tank leaked and caused the workers to lose a day of pay when their places of employment were closed. 825 S.W.2d 83, 84 (Tenn. Ct. App. 1990). The court stated that it was "disallow[ing] recovery for purely economic loss absent physical injury or property damage." Id. at 86. One judge dissented from the court's application of the economic loss doctrine, arguing that the majority was "mechanically applying" a "dated" rule. Id. (Franks, J., dissenting).

The Tennessee Court of Appeals has since implicitly restricted the economic loss doctrine to claims involving products liability or the sale of goods, at least where the plaintiff can establish a sufficiently direct relationship between the defendant's negligent act and the plaintiff's economic loss. Trinity Indus., Inc. v. McKinnon Bridge Co., Inc., 77 S.W.3d 159, 173-74, 182 (Tenn. Ct. App. 2001) (appearing to limit economic loss doctrine to cases involving sale of goods under the UCC) (discussing Sain v. ARA, 660 S.W.2d 499 (Tenn. Ct. App. 1983)). Furthermore, in a subsequent unpublished opinion from the Tennessee Court of Appeals written by now Justice Koch of the Tennessee

---

[6] The two unpublished cases Swift cites are Rural Developments, LLC v. Tucker, No. M2008-00172-COA-R3-CV, 2009 WL 112541 (Tenn. Ct. App. Jan. 14, 2009) and Amsouth Erectors, LLC v. Skaggs Iron Works, Inc., No. W2002-01944-COA-R3-CV, 2003 WL 21878540 (Tenn. Ct. App. Aug. 5, 2003). Neither of these opinions provides the court's reasoning for applying the economic loss doctrine to cases not involving the sale of goods.

9

Supreme Court, the court discussed the economic loss doctrine, apparently confining its applicability to the sale of goods by stating the following:

> The economic loss rule is a judicially created principle that requires parties to live by their contracts rather than to pursue tort actions for purely economic losses arising out of the contract. The rule comes into play when the purchaser of a *product* sustains economic loss without personal injury or damage to property other than the *product* itself. In that circumstance, the purchaser must seek a remedy in contract, not in tort. Thus, when a purchaser's expectations in a sale are frustrated because a *product* does not work properly, the purchaser's remedies are limited to those prescribed by the law of contract.

McLean v. Bourget's Bike Works, Inc., No. M2003-01944-COA-R3-CV, 2005 WL 2493479, at *5 (Tenn. Ct. App. Oct. 7, 2005) (internal citations omitted and emphasis added). Moreover, federal courts applying Tennessee law have declined to extend the economic loss doctrine beyond cases involving the sale of goods. See, e.g., Corso Enters., Inc. v. Shop at Home Network, Inc., No. 3:04-0260, 2005 WL 2346986, at *6-7 & n.7 (M.D. Tenn. Sept. 26, 2005) ("Thus, governance by the UCC of the contract at issue is a prerequisite to the application of the economic loss doctrine and resulting preclusion of recovery in tort.").

In confronting whether the economic loss doctrine should apply to transactions involving services, the Wisconsin Supreme Court noted that the "genesis of the economic loss doctrine lies in products liability cases." Ins. Co. of North Am. v. Cease Elec. Inc., 688 N.W.2d 462, 467 (Wis. 2004). Application of the economic loss doctrine to cases involving defective products is not surprising, the court reasoned, because the Uniform Commercial Code ("UCC") sets forth the full series of rights and remedies available to an aggrieved purchaser who suffers only economic losses. Id. at 467-68. Since the UCC is inapplicable to service contracts, the court held that it would not apply the economic loss

doctrine to suits seeking recovery for negligently provided services. Id. at 470, 472. This rationale for limiting the economic loss doctrine echoes that expressed by the Tennessee Supreme Court in deciding to limit a plaintiff suing for a defective product who sustained only economic losses to remedies under the UCC instead of allowing the plaintiff to proceed under a theory of negligence. Ritter, 912 S.W.2d at 133 & n.8. If the existence of UCC remedies provides the justification for not allowing the plaintiff to sue in tort, the absence of UCC remedies should counsel in favor of allowing tort recovery. Thus, the Court believes that, like the Wisconsin Supreme Court, the Tennessee Supreme Court would rely on the fact that the economic loss doctrine has its origins in the UCC to preclude application of the doctrine to suits not involving UCC remedies, specifically those concerning the provision of services.

Considering all appropriate indicia, the Court concludes that the Tennessee Supreme Court would decline to extend the economic loss doctrine to cases involving the provision of services if squarely faced with this question. Accordingly, Swift's motion to dismiss Plaintiffs' negligence claims is denied.

**C. Ripeness and Exhaustion of Administrative Remedies**

Swift also argues that Plaintiffs' complaint should be dismissed in its entirety under Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs have not exhausted available administrative remedies and Plaintiffs' claims are not yet ripe for adjudication.

The doctrine of ripeness precludes courts from entering into disputes that are speculative, contingent, and not yet amenable to judicial review. Kentucky Press Ass'n, Inc. v. Kentucky, 454 F.3d 505, 509 (6th Cir. 2006). "The ripeness doctrine not only

depends on the finding of a case or controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." Brown v. Ferro Corp., 763 F.2d 798, 801 (6th Cir. 1985). The related requirement of exhaustion of administrative remedies is largely—though not exclusively—a creature of statute and is imposed where appropriate to fully develop issues in a contest over an agency's actions. See Sims v. Apfel, 530 U.S. 103, 108-110 (2000); see also Coalition for Gov't Procurement v. Federal Prison Indus., Inc., 365 F.3d 435, 453-64 (6th Cir. 2004). Exhaustion protects agency authority by allowing the agency to correct its own mistakes and promotes efficiency by allowing claims to be developed and possibly resolved quickly and economically without resorting to litigation in the first instance. Woodford v. Ngo, 548 U.S. 81, 88-89 (2006); Fazzini v. Northeast Ohio Correctional Ctr., 473 F.3d 228, 232 (6th Cir. 2006).

According to Swift, the revocation of Plaintiffs' CDLs is still subject to challenge in administrative proceedings before the TDOS and other responsible state agencies and, as a result, Plaintiffs have not exhausted available administrative remedies. Plaintiffs, however, do not contest the determination by any licensing agency that their licenses were the product of Swift's flawed testing procedures and thus invalid, which is why Plaintiffs seek redress from Swift—the entity allegedly to blame for the invalidation of their licenses. Neither the Court nor Swift can compel Plaintiffs to challenge an administrative decision with which they do not find fault. Furthermore, Plaintiffs seek money damages from Swift, not to have state licensing authorities change their decisions revoking Plaintiffs' licenses. Thus, the Court rejects Swift's arguments regarding exhaustion.

Swift also submits that Plaintiffs' claims are not ripe, again, because Plaintiffs have not challenged the revocation of their licenses through administrative remedies. Of course, if Plaintiffs do not believe the relevant state administrative agencies erred, then Plaintiffs should not be forced to seek administrative redress. Moreover, Plaintiffs' complaint alleges that Plaintiffs have already had their licenses revoked by state authorities. The injury Plaintiffs describe is not hypothetical or speculative, but instead constitutes an allegation of final harm that is ripe for judicial review. Accordingly, the Court rejects Swift's arguments as to ripeness and exhaustion.

### D. Failure to Join an Indispensable Party

Finally, Swift argues that Plaintiffs' action must be dismissed because the State of Tennessee is an indispensable party that cannot be added because it is immune from suit under the Eleventh Amendment.

Rule 19(a) of the Federal Rules of Civil Procedure provides as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Rule 19(b) addresses those situations in which joinder is not feasible by stating:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action

13

>should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>>(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>>(2) the extent to which any prejudice could be lessened or avoided by:
>>>(A) protective provisions in the judgment;
>>>(B) shaping the relief; or
>>>(C) other measures;
>>
>>(3) whether a judgment rendered in the person's absence would be adequate; and
>>(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). A party seeks dismissal for failure to join an indispensable party by a motion to dismiss under Rule 12(b)(7). See Fed. R. Civ. P. 12(b)(7).

Swift contends that the State of Tennessee is a necessary party under Rule 19(a) because (1) only the State of Tennessee can provide the parties complete relief; (2) Swift acted solely as an agent for the State of Tennessee in testing Plaintiffs; and (3) the State of Tennessee has an interest in protecting the integrity of the administrative process by which it revoked Plaintiffs' licenses. Swift's first and third points are premised on a misunderstanding of Plaintiffs' complaint. As noted above, Plaintiffs do not seek to have any state agency reverse the revocation of their Swift-issued CDLs. Instead, Plaintiffs seek damages for Swift's flawed testing. Furthermore, the fact that Swift acted on behalf of the State of Tennessee in testing Plaintiffs does not necessarily mean that Swift cannot be held liable to Plaintiffs for its failure to comply with federal and state law in conducting that testing. Cf. White v. Revco Discount Drug Ctrs., Inc., 33 S.W.3d 713, 724 (Tenn. 2000) ("It is also well settled that an agent may serve two masters simultaneously, so long as the objectives of one master are not contrary to the objectives of the other."). Notably, Swift does not assert that the State of Tennessee directed,

authorized, or even acquiesced in its alleged breaches of state and federal law in testing drivers for CDLs. Indeed, Plaintiffs allege that Swift failed in its duties to the State of Tennessee as well as to Plaintiffs. Therefore, the Court finds that the State of Tennessee is not an indispensable party under Rule 19.

Additionally, even assuming that the State of Tennessee were an indispensable party, the Court still would not find dismissal of Plaintiffs' suit appropriate. Specifically, Swift has failed to identify any particular way in which they would be prejudiced by the failure to have the State of Tennessee present as a party to this suit. Moreover, Plaintiffs would lack a legal means of recovering damages from Swift if this case were dismissed. Accordingly, Swift's request to dismiss for failure to join an indispensable party is denied.

## IV. CONCLUSION

For the reasons stated above, Swift's motion to dismiss Plaintiffs' Second Amended Complaint is **DENIED**.

**IT IS SO ORDERED**, this the 17th day of March, 2010.

<u>s/Bernice Bouie Donald</u>
**BERNICE BOUIE DONALD**
**UNITED STATES DISTRICT JUDGE**

15